IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MATTHEW MOORE, ) | |
| ) | |
| ) | CIVIL ACTION NO. 0:06-3514-HFF-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on November 14, 2003 (protective filing date), alleging disability as of January 2003 due to arthritis. (R.pp. 87-88, 94, 236-240). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on March 9, 2006. (R.pp. 30-65). The ALJ thereafter denied Plaintiff's claims in a decision issued June 15, 2006. (R.pp. 13-24). The Appeals Council denied Plaintiff's request for a review of

---

[1]On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g) (2000).



the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 5-7).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as

2



it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was thirty-five (35) years old when he alleges his disability began, has a twelfth grade equivalent education with past relevant work experience as a maintenance worker and a manufacturing plant manager/supervisor. (R.pp. 87, 95, 99, 101). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff is unable to perform any of his past relevant work, he nevertheless retained the residual functional capacity to perform the full range of sedentary work[2], and was therefore not disabled. (R.pp. 19, 22-23).

Plaintiff asserts that in reaching this decision, the ALJ erred by improperly evaluating Plaintiff's problems with depression, by failing to acknowledge the existence of a family court decision wherein Plaintiff was found to be 100% disabled, by improperly evaluating the medical evidence relating to Plaintiff's complaints of pain, and by relying on the Medical-Vocational Guidelines (i.e., the "Grids")[3] to find that Plaintiff was not disabled even though he suffers from

---

[2]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

[3]"The grids are matrices of the 'four factors identified by Congress -- physical ability, age, education, and work experience -- and set forth rules that identify whether jobs requiring specific



severe non-exertional limitations. However, after careful review and consideration of the arguments and evidence presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

**I.**

With regard to Plaintiff's objection concerning the ALJ's findings with respect to Plaintiff's depression, the undersigned can find no reversible error in the ALJ's treatment of this evidence. While there is a documented history of Plaintiff having problems with anxiety and depression dating back to the 1990s (well before Plaintiff's alleged disability onset date), the ALJ correctly notes that Plaintiff did not receive ongoing mental health counseling or treatment for this condition. Further, there are apparently only three instances where Plaintiff was seen by medical personnel for this complaint during the relevant time period, in August 2003, January 2005, and August - September 2005. (R.pp. 139-140, 212-214, 226-228).

On August 12, 2003, Plaintiff was noted to have a history of depression, and was assigned a GAF of 55[4] based on methamphetamine and alcohol dependence, as well as "physical

---

combinations of these factors exist in significant numbers in the national economy.'" Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting Heckler v. Campbell, 461 U.S. 458, 461-462 (1983)). "Through the Grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (i.e., sedentary, light, medium, heavy, and very heavy.)" Daniels, 154 F.3d at 1132.

[4]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF of 51 to 60 indicates that only moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000).



abuse of partner". The treatment sheet indicates that Plaintiff was to referred to the Department of Social Services for a psychiatric evaluation. However, Plaintiff never returned for services, did not respond to correspondence, and was therefore discharged from any further care. (R.pp. 139-140). A year and a half later Plaintiff was seen at the Anderson-Oconee-Pickens Mental Health Center on January 18, 2005 pursuant to a request by Plaintiff's father that he be evaluated. At that time Plaintiff was being housed in the Anderson County Detention Center. Although Plaintiff was found to be experiencing depression and anxiety, he was noted to have few psychiatric symptoms, and was assigned a GAF of 60. (R.pp. 212-214). Plaintiff later returned to the Anderson-Oconee-Pickens Mental Health Center in August 2005, where he exhibited anxiety and agitation and self-reported numerous psychiatric symptoms. Plaintiff was assigned a GAF of 45.[5] (R.pp. 226-228).

On June 27, 2004, psychiatrist Dr. Xanthia Harkness reviewed Plaintiff's medical records and completed a psychiatric review technique form in which she opined that Plaintiff had a history of depression and poly-substance dependency which resulted in only mild restrictions in activities of daily living and no other functional limitations. In rendering this opinion, Dr. Harkness noted that as recently as June 6, 2004 Plaintiff was not on any medication and did not himself consider his problems with depression to be a disability. (R.pp. 123, 189, 194, 196, 198).

The ALJ reviewed this medical evidence and found that Plaintiff's history of depression was a non-severe impairment that only minimally effected his ability to work, if at all. In making this finding, the ALJ noted the medical record showing that Plaintiff had received

---

[5] "A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)'". Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001).



relatively little mental health treatment since his alleged disability onset date, and specifically adopted the findings of Dr. Harkness. (R.pp. 18-19). See Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]; see also SSR 96-6p [Agency physicians are experts in the evaluation of medical issues for purposes of disability claims]. There is substantial evidence in the record to support this finding. The paucity of treatment received by the Plaintiff for this condition is evident, with the few episodes of consultations in the record consisting mainly of Plaintiff's own self-reported symptoms. The ALJ was not, as is argued by the Plaintiff, required to obtain additional consultations regarding Plaintiff's mental status based on this evidence. Further, as previously noted, Plaintiff did not himself believe his problems with depression were disabling. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) [no error where ALJ failed to order consultative examination before concluding claimant had no mental impairment where claimant did not allege disability due to mental impairment and presented only minimal evidence on issue]; Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988) [ALJ not required to order consultative examination where record fails to establish such an examination is necessary]; see also 20 C.F.R. § 404.1519a.

      Plaintiff's assignment of error with respect to this finding appears to primarily be based on the ALJ's statement number 3 under his findings of fact and conclusions of law that "[t]he claimant has the following severe impairments: arthritis and history of depression....". (R.p. 17). Plaintiff argues that this statement is contradictory to the findings set forth by the ALJ in his decision with no explanation being given for this conflict, necessitating reversal. The undersigned does not



agree. The language cited by the Plaintiff is indeed contradictory on its face, because the actual findings and conclusions with respect to this impairment as set forth by the ALJ in the body of his decision is that Plaintiff's depression was a *non-severe* impairment. See (R.pp. 17-19). This drafting error does not, however, necessitate a reversal of the decision. A plain reading of the decision itself shows that the ALJ extensively discussed the medical evidence relating to Plaintiff's problems with depression and the severity thereof, and that he made a specific finding that that impairment was non-severe and resulted in no more than mild restrictions of activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation (each of extended duration). Id.

Since it is abundantly clear what the ALJ's decision was, Plaintiff's argument that the decision should be reversed because of the cited "scriveners" error and/or unartful drafting is without merit. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; *cf.* Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ["An arguable deficiency in opinion -writing technique is not a sufficient reason for setting aside an administrative finding where...the deficiency probably had no practical effect on the outcome of the case"], quoting, Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987).

## II.

The ALJ found that Plaintiff's limitations do not prevent him from performing the full range of sedentary work, and used the Medical-Vocational Guidelines (Rule 201.29) to direct a finding of not disabled. (R.p. 23). Plaintiff argues that he suffers from non-exertional impairments that were not properly considered by the ALJ, including depression and headaches which cause pain, and that in light of these non-exertional impairments it was reversible error for the ALJ to rely on the

7



Grids to direct a finding of not disabled in this case. However, as previously noted, the ALJ specifically found that Plaintiff's history of depression was a "non-severe impairment that minimally affects the [Plaintiff's] ability to work, if at all," a finding supported by substantial evidence in the record. (R.p. 19). See discussion, supra. Cf. Guyton v. Apfel, 20 F.Supp.2d 156, 163 (D.Mass. 1998) [discussing reliance on Grids where non-exertional limitations were found to not significantly effect claimant's ability to engage in substantial gainful activity].

As for Plaintiff's headaches, the ALJ referenced Plaintiff's complaints of migraine headaches (as well as Plaintiff's allegations of panic attacks and "black outs") in his decision, but after consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence....", he did not find that any of these complaints constituted severe impairments (R.pp. 20-22). In support of this finding the Commissioner notes in his brief that, notwithstanding Plaintiff's testimony that he had required emergency room treatment for headaches, there was absolutely no record that Plaintiff had ever received emergency room treatment for headaches or for any other complaint during the relevant time period. (R.pp. 48-49). Plaintiff's complaint that the ALJ did not discuss Plaintiff's problems with headaches more extensively is without merit. Cf. Dowdy v. Barnhart, No. 04-1056, 2005 WL 3841868, at *4 (M.D.Ala. Jan. 4, 2005) [ALJ is not required to discuss alleged limitations for which there is no supporting evidence] (citing 20 C.F.R. § 404.1545(e)).

While the ALJ's determination that Plaintiff is unable to perform his past relevant work shifted the burden to the Commissioner to show that other jobs exist in significant numbers which Plaintiff could perform; see Pass v. Chater, 65 F.3d 1200, 1201-1203 (4th Cir. 1995); it is entirely appropriate for the Commissioner to meet this burden by using the Grids to direct a finding

8



of not disabled in cases involving only exertional limitations. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Hays, 907 F.2d at 1458 [affirming denial of benefits to claimant where the Medical-Vocational Guidelines directed a finding of not disabled]. That is what the ALJ found in this case, and the undersigned can find no reversible error in the ALJ's findings and use of the Grids based on this evidence. *Cf.* Guyton, 20 F.Supp.2d at 163 [discussing reliance on Grids where non-exertional limitations were found to not significantly effect claimant's ability to engage in substantial gainful activity]; Egleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) [presence of non-exertional limitations does not preclude use of the Grids if non-exertional limitations do not further limit the claimant's ability to perform work]; Gentry v. Secretary, No. 85-5751, 1986 WL 17763 at **1-2 (6th Cir. 1986) [In a case where the impairments included migraine headaches, the court held that "[n]on-exertional limitations preclude use of the grid only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level."]; Ortiz v. Secretary of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) ["If a non-strength impairment, even though considered significant, has the effect only of reducing [the] occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability."]. Therefore, this argument is without merit.

### III.

Plaintiff also assigns as error the ALJ's failure to acknowledge the existence of a family court order finding that Plaintiff was "totally disabled", or to discuss this order in his decision. Plaintiff argues that the ALJ is required by 20 C.F.R. § 404.1512(b)(5) to discuss this order as well as his apparent failure to give any weight to the family court's findings, necessitating reversal. The undersigned does not find that the ALJ committed reversible error by failing to discuss this state



family court order.

Section 404.1512 requires a claimant seeking Social Security benefits to "furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are...disabled, its effect on your ability to work on a sustained basis." Section 404.1512(a).   The term "evidence" as defined as anything that a claimant or anyone else submits or that the Commissioner obtains that relates to a claimant's claim, including "[d]ecisions by any governmental or non-governmental agency about whether you are disabled...." Section 404.1512(b)(5).  It is unclear whether an order of a South Carolina family court is the type of "governmental agency" intended to be referenced by the cited CFR, as it is not an entity normally charged with making decisions about disability such as a state worker's compensation committee.  Nevertheless, the decision of a state court is certainly something that can be considered by an ALJ in reaching his or her decision, although it is obviously not binding on the ALJ.  *Cf.* Schmidt v. Secretary of Health, Education and Welfare, 299 F.Supp. 1315, 1318 (D.C. Puerto Rico 1969); Gonzales v. Califano, 452 F.Supp. 411, 415 (D.C.N.M. 1978).  The issue here is whether the ALJ's failure to even discuss this family court order in his decision constitutes reversible error.  The undersigned concludes that it does not.

The order itself contains no specifics about Plaintiff's medical condition; indeed, it does not even indicate what his medical problems are.  Rather, this order (dated June 1, 2004) states simply that "the Court is in receipt of a statement from the [Plaintiff's] doctor stating that he is totally disabled and the Court agrees with same." (R.p. 117).  The order then goes on to state that "[t]he [Plaintiff] is totally disabled" (apparently for purposes of that hearing), with Plaintiff to provide an updated doctor's statement regarding his condition at a subsequent hearing to be held on September



21, 2004.  (R.pp. 117-119).  This is thin gruel indeed on which to base a finding, or even an argument, of disability for purposes of a Social Security Disability claim, and as such it is not surprising that the ALJ did not feel a need to mention this order.  In any event, in light of the ALJ's thorough discussion of the actual medical evidence in the case as well as Plaintiff's subjective testimony, the undersigned does not find any reversible error in the ALJ's failure to discuss this family court order.  Dryer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002); This argument is without merit. Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; *cf.* Brown, 87 F.3d at 966 ["An arguable deficiency in opinion -writing technique is not a sufficient reason for setting aside an administrative finding where...the deficiency probably had no practical effect on the outcome of the case"].

## IV.

Finally, Plaintiff's argument that the decision should be reversed because the ALJ conducted a flawed credibility analysis and did not properly evaluate the evidence with respect to Plaintiff's complaints of pain is without merit.  The ALJ reviewed Plaintiff's testimony regarding the nature and extent of his pain and limitations, but found that Plaintiff's statements regarding the intensity, duration and limiting effects of his impairments were not entirely credible.  (R.pp. 20-21). The ALJ compared Plaintiff's testimony with the objective medical evidence which, although confirming that he suffers from osteoarthritis, did not in the ALJ's opinion show that Plaintiff

11



experiences pain severe enough to prevent him from performing sedentary work.[6] The ALJ pointed out where the objective medical record did not support claims made by the Plaintiff, the fact that no state agency reviewer, examiner, or consultant had opined that Plaintiff was unable to perform sedentary employment, nor had any treating physician ever imposed such limitations on him, and concluded that Plaintiff's limitations allowed him to perform the full range of sedentary work. (R.pp. 19-23).

Substantial evidence supports these findings, as the medical records from the applicable time period generally reflect that Plaintiff retained normal muscle strength with only mildly reduced lower extremity muscle strength or hand grip strength, a general absence of edema, and that Plaintiff had failed to comply with recommended treatment regimens. See generally, (R.pp. 167-168, 170, 202, 204, 230). See Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations]; Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) [finding that a failure to seek treatment supported an inference that the claimant's condition was not disabling]; *cf.* Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993) [record of failure to obtain treatment provided substantial support for ALJ's finding that claimant's impairments did not preclude him from returning to work]. While Plaintiff argues there is evidence in the record from which more severe findings could have been inferred, the ALJ was not required to accept or consider only the more severe possible effects of Plaintiff's condition. Rather, he properly performed his role by making his decision based on a

---

[6]In making this finding, the ALJ even gave Plaintiff the benefit of the doubt by discounting two state agency reports finding that Plaintiff could perform work at the *medium* level of work. (R.pp. 22, 142-145, 157-160). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



review of *all of the evidence* and consideration of that evidence. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Laws, 368 F.2d at 642 [Commissioner's decision must be upheld if the record contains evidence which a reasoning mind would accept as sufficient to support the conclusion].

In sum, the undersigned does not find that the ALJ conducted an improper credibility or pain analysis, or that his decision otherwise reflects a failure to consider the combined effect Plaintiff's impairment had on his ability to work. See Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Hunter 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [conservative treatment not consistent with allegations of disability]. This argument is without merit.

## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept



as sufficient to support a particular conclusion." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

December   20,   2007

